HuetiN, Judge.
 

 The form of tlie proceedings at law gave to the defendant Jones, the advantage of acting on iiis execution before the plaintiffs could regularly communicate to the County Court the judgment of this court upon the several appeals mentioned in the pleadings.— The bill does not, and could not properly complain of that in itself. But it alleges that there was an agreement or understanding, that the rignts of the parties should then abide the opinion of the court upon the question whether the parties were originally equally entitled to immediate execution. Such an agreement would certainly give the plaintiffs the equity claimed by them. The conduct of
 
 Jones,
 
 in not selling pending the appeal, affords by itself, a fair ground to infer such an agreement. But that is the only evidence of it, and that inference is entirely rebutted by the express and positive denial by this defendant of such an agreement or any other, by which would be given to the judgment of this court, any other effect than by its own force it would have. His appeal from the order of a
 
 supersedeas,
 
 left him at liberty to continue his process of execution. He did continue it pending the appeal, for the purpose, as he says, of preserving the preference he then supposed himself to have. He admits he did not proceed to a sale, but he avers, that he refrained solely upon the ground, that the judgment might be against him, and not because of a new contract, of which he denies the existence altogether.
 

 it is however, chiefly insisted for the plaintiffs,
 
 that
 
 there was a combination of the defendants to give
 
 Jones
 
 an undue preference, by entering the judgments in such manner as would apparently justify the clerk in refusing to issue the execution of the bank, and in issuing that of
 
 Jones
 
 immediately, and that accordingly
 
 Stanly
 
 did so act in reference to the executions.
 

 It is to be considered, how the facts assumed in this proposition are in reality, and also how far the conclusions of law are correct.
 

 Supposing that it were in the power of the parties to give the preference alleged, it becomes a question,
 
 *289
 
 (without now adverting to the official character of Mr. Stanly,) whether a court of Equity could relieve against it. It is quite unnecessary at this day, to discuss the considerations which may in conscience justify the satisfaction of one creditor, to the total disappointment of another; or, on the other hand, review the arguments upon which courts of Equity have adopted, the maxim, that equality is equity. It is perfectly settled, that at law, an insolvent debtor, or his executor or heir, may pay which creditor ho chooses. This court acts upon its own maxim, when called on to apply a fund, the subject of its own exclusive jurisdiction. But it has never been able to restrain the exercise of the power at law. This is not because it is a-just right of the person exercising the power. Ho may perhaps have acted against sound morals. Possibly the disappointed creditor may be an infant ward, or otherwise the most meritorious. Or perhaps nothing may justify the dealing with an unequal hand with creditors. Yet it is allowed to stand here, when the law permits it. Why? Only because the favored pei'son has got nothing that was not due to him, Being a just creditor, he can with a safe conscience keep as much of his debt as he can get. There is no equity against him. Each creditor takes care of himself, and is not charged with the interest of the other, when there exists between them no other connexion but that of being the several creditors of the same insolvent. The mere fact of the preference of
 
 Jones,
 
 if such had been gained by the method of letting the judgments pass, does not render him liable to share with the plaintiffs.
 

 If a debtor can, at law, give ons creditor apriority, a court of Equity will not restrain Mm from doing
 

 Because the favored creditor gets nothing but what he has a right .to receive.
 

 Where twocre.-entTttedTo^McS tions, and the sueüífavorofoné of them, it is not ence!** °f pTefe>
 

 But in truth, no such preference was obtained, however
 
 it
 
 may have been designed. No doubt that was the design of the defendants Mrs.
 
 Harvey
 
 and Mr.
 
 Stanly.
 
 But the attempt proved ineffectual. The opinion of the Supreme Court determines conclusively, that notwithstanding the forms of entering up the judgments, the bank was enti-tied to immediate execution as well as
 
 Jones.
 
 The plaintiffs might have demanded, and did demand execution forthwith, and after the decision of the Supreme Court, again demanded it.
 

 
 *290
 
 And
 
 it seems,
 
 that the creditor has no redress against the other, unless perhaps where the latter induced the clerk not to issue the execution of the first.
 

 To these demands, the clerk returned positive denials-, although At the time of the last he was informed, not officially, of the opinion of this court.
 

 I think the case is reduced to the single enquiry, how those denials and the subsequent conduct of the parties affect them respectively.
 

 There is nothing to charge Mrs.
 
 Harvey
 
 with a knowledge, much less a concurrence in this part of the transaction.
 

 The acts of the clerk are plainly wrongful. He was guilty of an official malfeasance, and is responsible for it.
 

 It is insisted further, that the defendant
 
 Jones
 
 cannot, with a safe conscience, take benefit from that wrong.
 

 If there were evidence that
 
 Jones
 
 participated in the wrong, by advising or procuring the clerk to refuse the plaintiffs an execution, it would be necessary to consider the effect of such active interference. Perhaps it might be distinguished from the common case of a sheriff paying money upon indemnity, or otherwise, to an execution creditor, who was not entitled ; in which, the sheriff is clearly liable, but in which, there is no adjudication of relief at law or in equity, as between the creditors. If there were a remedy for the one .creditor against the other, it would seem to be at laiv, and upon this ground, that one had received more than by law he was entitled to. But no case of the sort is found ; nor any, where the satisfied creditor has been made to reimburse to the sheriff, the money he has been compelled to pay to the other creditor. In other words, the sheriff acts upon his own responsibility, and must answer without reference to inadvertence, or mistake on his part, or he must provide an indemnity for himself by contract. I do not perceive any solid distinction between the two cases. But this cause does not at all depend upon that analogy, and is decided without reference to the rights and liabilities which might arise upon a state of facts, shewing ah active participation in the refusal to give the plaintiffs their execution.
 

 The least incitement or suggestion on the part of
 
 Jones
 
 to the clerk to that effect, is explicitly denied by
 
 *291
 

 Jones,
 
 and disclaimed by
 
 Stanly.
 
 All tlie former did, was to sue out his own execution. "That, he had a right ^ to do. He did not interpose the slightest obstacle in the Avay of the other creditor. There is no fault in
 
 Jones
 
 in this respect, it is that of the clerk exclusively. Whatever aid a sense of private justice may prompt
 
 Jones
 
 to extend to Stanly, upon the score of the benefit accruing to him from the others default, I do not see that he is liable to either party upon legal principles. For
 
 Stanly
 
 avows, that he acted on his own opinion ; and it is to be collecfed, that if
 
 Jones
 
 had requested the clerk to issue the plaintiff’s execution, he would likewise have refused, because he thought it to be his duty to refuse. As a creditor preferred, and even improperly gaining a preference by the default of the officer under these circumstances, the plaintiffs have not an equity against
 
 Jones ;
 
 because, he has committed no wrong, and because they have a direct and complete remedy against the officer himself. The question is not one of loss between the creditors, for neither of them can lose any thing. The question is between
 
 Jones
 
 and the officer — which of them shall pay the sum to the plaintiffs, acknowledged by all to be due to them. And upon that, in the actual state of the case, I think there can be no
 
 doubt;
 
 even should tiro law be different had
 
 Jones
 
 been accessory to the official malfeasance.
 

 His only remedy ciaTbond^of'the clerk,
 

 And the measure tamed by his mis-, “ference To^his motives,
 

 It was slightly intimated in the argument, that the action against the clerk, might prove to be an inefficient remedy ; because it is a question of damages, and the jury might be influenced by circumstances improperly deemed by them to lie in mitigation. That would be equally an objection to every assessment of damages. But if it could in any case, it cannot have an effect here, because this is not the case of a vindictive action, but there is a fixed measure of damages, namely, the actual loss sustained by the misconduct of the clerk. Damages in such a case, may be aggravated by corrupt motives, but they cannot be reduced below a real compensation for the injury in fact sustained. A ministerial officer is paid as well for his responsibility as his time and labor,
 
 *292
 
 and must therefore answer for all the consequences of his default to the full extent. The plaintiffs then have sustained no loss, as between them and
 
 Jones,
 
 to be made up out of his gains. The plaintiffs have an adequate remedy against another person, for their whole loss. To meet this view of the case, the bill further charges the insolvency of
 
 Stanly.
 
 I do not pretend to say how that might operate, if we could find the fact to be as al-ie2.c(|. J5ut we must take it to be otherwise. The personal insolvency of the clerk, docs not materially imPa*r the security of a demand founded on his official conduct. He is required to give bonds with approved sureties annually, and these are all cumulative securities up to the breach. It appears from tlie pleadings, that
 
 Stanly
 
 has been in office many years, so that it is next to impossible, that insolvency should run through his sureties! and to the present purpose, their solvency is his.
 

 Whether the
 
 m-
 
 clerk and his sure-Sy MferencT—
 
 Qu?
 

 It is the opinion, therefore, of the court, that the plaintiffs have adequate remedy at law against the defendant
 
 Stanly,
 
 and that the bill be dismissed with costs.
 

 Per Curiam — Bin, dismissed.